STATE OF NORTH CAROLINA v. TAMMY KAY SINNOTT AND DAVID MICHAEL SINNOTT

No. COA03-187

(Filed 16 March 2004)

**1. Taxation— income tax—compensation for labor— constitutionality**

The trial court did not err in an attempting to evade and defeat the imposition and payment of North Carolina Individual Income Tax case by denying defendants' identical pretrial motions to dismiss the charges against them, because: (1) it is constitutional to tax an individual's compensation for labor; (2) taxing income is not an unconstitutional capitation tax; (3) defendants failed to make an argument in support of their contention that this action was commenced by the Department of Revenue rather than by the State thus violating Article IV, § 13 of the North Carolina Constitution, and defendants' contention is a misstatement of what in fact occurred; (4) paying income tax is not a violation of the prohibition against involuntary servitude; and (5) N.C.G.S. §§ 105-236(7) and 105-236(9) are not too vague and general as to be ambiguous.

**2. Taxation— attempting to evade and defeat imposition and payment of individual income tax—sufficiency of evidence**

The trial court did not err in an attempting to evade and defeat the imposition and payment of North Carolina Individual Income Tax case by denying defendants' motion to dismiss the charges against them at the close of all evidence, because the evidence was sufficient to establish that: (1) defendants willfully attempted to evade or defeat a tax or its payment in violation of N.C.G.S. § 105-236(7) when defendants filed returns in 1993 and 1994 indicating tax liability and then subsequently filed amended tax returns which listed their taxable income as zero without including exemptions and deductions which warranted a conclusion that no taxes were owed, and defendants also filed returns in 1995 and 1996 indicating they owed no taxes without deductions and exemptions to justify their claim; and (2) defendant husband willfully failed to file income tax returns for years 1997, 1998, 1999, and 2000 despite the fact that his gross income exceeded his federal and state exemption allowances in violation of N.C.G.S. § 105-236(9).

Appeal by defendants from judgments dated 31 May 2002 by Judge Evelyn W. Hill in Superior Court, Wake County. Heard in the Court of Appeals 19 November 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Michael D. Youth, for the State.*

*Tammy K. Sinnott and David M. Sinnott, Pro Se.*

McGEE, Judge.

Tammy Kay Sinnott (Tammy Sinnott) and David Michael Sinnott (David Sinnott) (collectively defendants) were convicted on 29 May 2002 of attempting to evade and defeat the imposition and payment of North Carolina Individual Income Tax for the calendar years 1993, 1994, 1995, and 1996, in violation of N.C. Gen. Stat. § 105-236(7). In addition, David Sinnott was also convicted of failing to file a North Carolina Tax Return for calendar years 1997, 1998, 1999, and 2000, in violation of N.C. Gen. Stat. § 105-236(9). Defendants appeal.

The evidence presented by the State at trial tends to show that defendants have been residents of North Carolina since at least 1989. In calendar years 1993 through 2000, defendants earned wages which exceeded the applicable federal exemption amounts. Accordingly,

defendants were required to file both federal and North Carolina individual income tax returns.

For calendar year 1993, defendants filed a joint state tax return on 24 January 1994, declaring their taxable income to be $39,883.00 with a tax liability of $2,579. Subsequently, defendants filed an amended 1993 return on 24 February 1997, declaring their taxable income to be zero. However, defendants listed no itemized deductions warranting a taxable income of zero. Essentially, defendants were claiming entitlement to a refund of the tax paid for 1993.

For calendar year 1994, defendants again filed a joint state tax return on 14 February 1995, declaring their taxable income to be $47,669 with a tax liability of $3,125. Similarly, on 23 February 1997, defendants filed an amended 1994 return declaring their taxable income to be zero even though the deductions and exemptions did not justify such a change. Again, defendants were claiming a refund.

For calendar year 1995, defendants filed a joint state tax return on 15 February 1997 declaring their taxable income to be zero with no evidence of deductions and exemptions legitimizing their claim. Thus, defendants were asking for a refund of the tax withheld in 1995.

For calendar year 1996, defendants filed a joint state tax return on 19 February 1997 declaring zero as their taxable income. They failed to submit evidence of deductions and exemptions entitling them to zero tax liability. Once again, defendants were asking for a refund of the tax withheld for the year 1996.

For calendar years 1997, 1998, 1999, and 2000, David Sinnott's gross income exceeded his federal and state exemption allowances and necessitated that he file both federal and state tax returns. David Sinnott failed to file a state tax return for these four years by the applicable deadlines.

[1] Defendants first argue that the trial court erred by denying their identical pre-trial motions to dismiss the charges against them on constitutional grounds. Defendants made these motions pursuant to N.C. Gen. Stat. § 15A-954, claiming that the criminal statutes which they were charged with violating, N.C. Gen. Stat. § 105-236(7) and (9), were facially unconstitutional and unconstitutional as applied to each of them. Within this overall argument, defendants specifically make the following constitutional arguments: (1) that the State's claim that

STATE v. SINNOTT

[163 N.C. App. 268 (2004)]

defendants' compensation for labor is taxable as income violates Article I, § 1 of the North Carolina Constitution and the Bill of Rights because it is a tax upon the fruits of one's labor, (2) that a tax on one's labor is a capitation tax in violation of Article V, § 1 of the North Carolina Constitution and Article I, § 9 of the United States Constitution, (3) that the action commenced against defendants was in violation of Article IV, § 13 of the North Carolina Constitution because it was an action by the Department of Revenue rather than the State, (4) that taxing compensation for labor violates the prohibition against slavery and involuntary servitude in Article I, § 17 of the North Carolina Constitution and the Thirteenth Amendment to the United States Constitution, and (5) that the applicable statutes are vague and ambiguous and thus violate the due process clause in Article I, § 19 of the North Carolina Constitution and the Fourteenth Amendment to the United States Constitution. For the reasons stated below, we find these arguments to be without merit.

Defendants' first argument is meritless because it is well-settled that it is constitutional to tax an individual's compensation for labor. This proposition was asserted in *Lonsdale v. Commissioner*, 661 F.2d 71 (5th Cir. 1981) where the federal court of appeals summarized the appellants' arguments by stating the following:

> The first category of contentions may be summarized as that the United States Constitution forbids taxation of compensation received for personal services. This is so, appellants first argue, because the exchange of services for money is a zero-sum transaction, the value of the wages being exactly that of the labor exchanged for them and hence containing no element of *profit*. This contention is meritless. The Constitution grants Congress power to tax "incomes, from whatever source derived . . . ." U.S. Const. amend. XVI. Exercising this power, Congress has defined income as including compensation for services. 26 U.S.C. § 61(a)(1). Broadly speaking, that definition covers all "accessions to wealth." *See Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431, 75 S.Ct. 473, 477, 99 L.Ed. 483 (1955). This definition is clearly within the power to tax "incomes" granted by the sixteenth amendment.

*Lonsdale*, 661 F.2d at 72. Defendants in the case before us seem to be asserting an argument similar to the one asserted by the appellants in *Lonsdale*. *Lonsdale* was followed in 1984 by a district court in the Fourth Circuit in the case of *Scull v. United States*, 585 F. Supp. 956, 963 (E.D. Va. 1984). The plaintiffs in *Scull* reported their taxable

income as zero and were assessed a penalty. The plaintiffs reported this amount because they claimed "that money received as wages is not taxable as income because it constitutes an exchange of labor for compensation." *Scull*, 585 F. Supp. at 963. In response, the district court cited *Lonsdale* and a multitude of other cases and stated, "[t]his position is clearly frivolous and is asserted in an effort to avoid the payment of taxes. The Internal Revenue Code explicitly provides that gross income includes compensation for services. 26 U.S.C. § 61(a)(1). Furthermore, the position the plaintiffs assert has been rejected repeatedly by the courts as frivolous." *Id.*

Similarly, a bankruptcy court in the Fourth Circuit cited *Lonsdale* and stated, "[w]ages are income; to argue otherwise is to make a meritless contention." *In re Hall*, 174 B.R. 210, 213 (Bkrtcy. E.D. Va. 1994). Although these decisions are not binding on our Court, we follow the reasoning asserted therein and hold that taxing compensation for labor is constitutional.

Defendants' second argument that taxing income is an unconstitutional capitation tax is also without merit. In *Ficalora v. Commissioner*, 751 F.2d 85 (2d Cir. 1984), *cert. denied*, 471 U.S. 1005, 85 L. Ed. 2d 162 (1985), the appellant argued that the income tax is a non-apportioned direct tax and that Congress does not have the constitutional power to impose such a tax. The Second Circuit disagreed and held that Congress did possess the authority and cited *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, 39 L. Ed. 759, *reh'g*, 158 U.S. 601, 39 L. Ed. 1108 (1895), *overruled on other grounds*, *South Carolina v. Baker*, 485 U.S. 505, 524, 99 L. Ed. 2d 592, 611 (1988). *Ficalora*, 75 F.2d at 87. " '[T]he conclusion reached in the *Pollock Case* did not in any degree involve holding that income taxes generically and necessarily came within the class of direct taxes on property[.]' " *Hale v. Iowa State Bd. of Assessment and Review*, 302 U.S. 95, 107, 82 L. Ed. 72, 80 (1937) (quoting *Brushaber v. Union P. R. Co.*, 240 U.S. 1, 16-17, 60 L. Ed. 493, 501 (1916)).

Similarly, in *In re Becraft*, 885 F.2d 547 (9th Cir. 1989), the Ninth Circuit noted the "patent absurdity and frivolity" of an argument that a direct non-apportioned income tax is not allowed. *Becraft*, 885 F.2d at 548. The court upheld the validity of federal income tax laws stating that "[f]or over 75 years, the Supreme Court and the lower federal courts have both implicitly and explicitly recognized the Sixteenth Amendment's authorization" of such a tax. *Id.* By analogy, a state income tax does not run afoul of the prohibition against capitation taxes. Accordingly, this argument is without merit.

STATE v. SINNOTT

[163 N.C. App. 268 (2004)]

Defendants fail to make an argument in support of their third contention within this assignment of error. Defendants merely state that this action was commenced by the Department of Revenue rather than by the State and thus violates Article IV, § 13 of the North Carolina Constitution. Accordingly, since no authority is cited and no reason or argument is stated, this contention is deemed abandoned pursuant to N.C.R. App. P. 28(b)(6). We note that not only is no argument asserted, defendants' contention is a misstatement of what in fact occurred. Defendants assert that the Department of Revenue commenced the action by serving warrants on 4 February 2002. However, even though a special agent with the Department of Revenue is listed as the complainant on the warrants, the fact remains that this action was instituted by the State of North Carolina as the caption indicates. Further, it is obvious that the State is the party opposing defendants in that an assistant attorney general prosecuted the case.

Defendants' fourth argument that paying income tax is a violation of the prohibition against involuntary servitude is also without merit. Again, due to a lack of state case law, we turn to federal law for guidance. In *Porth v. Brodrick*, 214 F.2d 925 (10th Cir. 1954), the Tenth Circuit affirmed the trial court's dismissal of the taxpayer's suit. The taxpayer argued that Congress' power to collect income taxes violated the prohibition against involuntary servitude. The court responded by stating, "[i]f the requirements of the tax laws were to be classed as servitude, they would not be the kind of involuntary servitude referred to in the Thirteenth Amendment." *Porth*, 214 F.2d at 926. Multiple other cases have come to this same conclusion and summarily dismissed this argument. *See Ginter v. Southern*, 611 F.2d 1226, 1229 (8th Cir. 1979), *cert. denied*, 446 U.S. 967, 64 L. Ed. 2d 827 (1980); *Kasey v. Commissioner*, 457 F.2d 369, 370 (9th Cir.), *cert. denied*, 409 U.S. 869, 34 L. Ed. 2d 120 (1972); *Abney v. Campbell*, 206 F.2d 836, 841 (5th Cir. 1953), *cert. denied*, 346 U.S. 924, 98 L. Ed. 417 (1954). We agree with the reasoning of these cases and find defendants' argument to be without merit.

Defendants' final contention within this assignment of error is that the statutes under which defendants were prosecuted are so vague and general as to be ambiguous. Defendants argue that N.C. Gen. Stat. § 105-236(7) fails to describe what conduct constitutes willfully, what constitutes an attempt to evade, and what amounts to aiding and abetting. Similarly, defendants argue that N.C. Gen. Stat. § 105-236(9) fails to state who is required to file,

fails to specify to whom the statute applies, and fails to explain what constitutes willfully.

"[T]he test for determining whether a statute is vague, as set forth by us in *Vehaun,* is whether the statute gives a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.' " *State v. Blackmon,* 130 N.C. App. 692, 700, 507 S.E.2d 42, 47, *cert. denied,* 349 N.C. 531, 526 S.E.2d 470 (1998) (quoting *State v. Elam,* 302 N.C. 157, 161-62, 273 S.E.2d 661, 664-65 (1981)).

Principles of "due process" require courts to declare a criminal statute unconstitutionally vague if the statute fails to clearly define what is prohibited. *Grayned v. City of Rockford,* 408 U.S. 104, 33 L.Ed. 2d 222, 92 S.Ct. 2294 (1972); *State v. Evans,* 73 N.C. App. 214, 326 S.E. 2d 303 (1985). A statute is "void for vagueness" if it forbids or requires doing an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. *Coates v. Cincinatti,* 402 U.S. 611, 29 L.Ed. 2d 214, 91 S.Ct. 1686 (1971); *In re Burrus,* 275 N.C. 517, 169 S.E. 2d 879 (1969), *affirmed* 403 U.S. 528, 29 L.Ed. 2d 647, 91 S.Ct. 1976 (1971). Only a reasonable degree of certainty is necessary, mathematical precision is not required. *Grayned v. City of Rockford, supra; State v. Martin,* 7 N.C. App. 532, 173 S.E. 2d 47 (1970).

*State v. Worthington,* 89 N.C. App. 88, 89, 365 S.E.2d 317, 318. (1988).

The subsections of N.C. Gen. Stat. § 105-236 which are at issue are as follows:

(7) Attempt to Evade or Defeat Tax.—Any person who willfully attempts, or any person who aids or abets any person to attempt in any manner to evade or defeat a tax or its payment, shall, in addition to other penalties provided by law, be guilty of a Class H felony.

. . .

(9) Willful Failure to File Return, Supply Information, or Pay Tax.—Any person required to pay any tax, to make a return, to keep any records, or to supply any information, who willfully fails to pay the tax, make the return, keep the records, or supply the information, at the time or times required by

law, or rules issued pursuant thereto, shall, in addition to other penalties . . . .

N.C. Gen. Stat. § 105-236(7) and (9) (2003).

Regarding subsection (7), defendants take issue with the term "willfully" and with what conduct constitutes an attempt to evade or defeat a tax. Although this language has not been addressed specifically in N.C. Gen. Stat. § 105-236(7) and (9), a challenge was mounted against a statute containing similar language in another context. N.C. Gen. Stat. § 14-202.1 (2003) punishes criminally one who "[w]illfully takes or attempts to take . . ." indecent liberties with a child. The appellants in *Blackmon* asserted a challenge based on the claim that N.C. Gen. Stat. § 14-202.1 was unconstitutionally void for vagueness. This Court upheld this statute despite the challenge. *Blackmon*, 130 N.C. App. at 699-700, 507 S.E.2d at 47. Likewise, we hold that the statute in the case before us withstands the constitutional vagueness challenge.

Defendants also contend that "aids and abets" is unconstitutionally vague. However, defendants cite no authority and make no argument for this proposition. Accordingly, this argument is deemed abandoned pursuant to N.C.R. App. P. 28(b)(6).

With respect to subsection (9), defendants primarily argue that the statute does not specify to whom it applies. The subsection refers to "[a]ny person required to pay any tax, to make a return . . . ." Defendants correctly assert that subsection (9) does not specify who must file a return. However, this provision is merely one which provides for penalties for those who fail to comply. One must look to a different provision within the Individual Income Tax Act (N.C. Gen. Stat. § 105-133 et seq.) to determine which individuals are required to file returns. The applicable provision is N.C. Gen. Stat. § 105-152 (2003). Subsection (a) is entitled "Who Must File," and it delineates exactly who must file an income tax return. Thus, N.C. Gen. Stat. § 105-236(9) does not fail for vagueness simply because it fails to reference which individuals are required to file income tax returns.

Defendants also take issue with the term "willfully" contained in subsection (9). Again, the analysis from *Blackmon* is instructive and we hold that the statute in the case before us withstands the constitutional vagueness challenge.

[2] Defendants next argue that the trial court erred by denying their motion to dismiss at the close of the State's evidence. "Upon defend-

ant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "Substantial evidence is that amount of 'relevant evidence that a reasonable mind might accept as adequate to support a conclusion.' " *State v. Armstrong*, 345 N.C. 161, 165, 478 S.E.2d 194, 196 (1996) (quoting *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995)). "The evidence must be viewed in the light most favorable to the State, and the State must receive every reasonable inference to be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal." *State v. King*, 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996) (citations omitted).

The evidence at trial showed that in 1993 and 1994, defendants filed returns indicating tax liability and then subsequently filed amended returns which listed their taxable income as zero. However, these amended returns failed to include exemptions and deductions which warranted a conclusion that no taxes were owed. Similarly, in 1995 and 1996, defendants filed returns indicating they owed no taxes without deductions and exemptions to justify their claim. In addition, Nancy Yokely (Yokely), a special agent with the Department of Revenue, testified as to a conversation she had with Tammy Sinnott regarding the payment of taxes. Yokely testified that Tammy Sinnott claimed to not owe taxes because she and her husband had no source of income and the income tax was a duty tax. Tammy Sinnott further claimed that she would not file any returns until she was given proof that she had to file. This evidence is sufficient to establish that defendants willfully attempted to evade or defeat a tax or its payment in violation of subsection (7).

In addition, the evidence tended to show that David Sinnott failed to file an income tax return for years 1997, 1998, 1999, and 2000 despite the fact that his gross income exceeded his federal and state exemption allowances and necessitated that he file a return in each of those years. This evidence, coupled with the testimony by Yokely, is sufficient to establish that David Sinnott willfully failed to file income tax returns in violation of subsection (9). Accordingly, the trial court did not err in failing to dismiss the charges. This assignment of error is overruled.

No error.

Judges HUNTER and GEER concur.